**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 17-cv-01205-REB

KIMBERLY S. GRANDUSKY,

    Plaintiff,

v.

NANCY BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security,[1]

    Defendant.

## ORDER AFFIRMING DEPUTY COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[2] filed May 16, 2017, seeking review of the Deputy Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Deputy Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges she is disabled as a result of lumbar degenerative disc disease, a cervical spine disorder, a left shoulder impairment, a left knee impairment, insomnia,

---

[1] On March 6, 2018, the Government Accountability Office determined that Nancy Berryhill's continuing status as Acting Commissioner of Social Security violated the Federal Vacancies Reform Act, and therefore that she was not authorized to continue serving as Acting Commissioner after November 16. Until such time as a successor is nominated and confirmed, Ms. Berryhill appears as the Deputy Commissioner of Operations for the agency.

[2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

gastroesophageal reflux disease ("GERD"), fatty liver disease, obesity, anxiety, colic, depression, and an affective disorder. After her application for supplemental security income benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on September 10, 2015. At the time of the hearing, plaintiff was 35 years old. She has a high school education and past relevant work experience as a certified nurse assistant and a security guard. She has not engaged in substantial gainful activity since at least May 13, 2013, the date of her application for benefits.

      The ALJ found plaintiff was not disabled and therefore not entitled to supplemental security income benefits. Although the evidence established plaintiff's degenerative disc disease, shoulder impairment, knee arthritis, and affective disorder constituted severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The remainder of plaintiff's other alleged impairments were found to be non-severe or to not meet the durational requirements of the regulations. The ALJ concluded plaintiff had the residual functional capacity to perform a reduced range of light, unskilled work with certain postural and manipulative restrictions. Although this finding precluded plaintiff's past relevant work, the ALJ found there were jobs existing in significant numbers in the national and local economies she could perform. He therefore also found plaintiff not disabled at step five. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Deputy Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(c). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

The Deputy Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 416.920(a)(4)(i)-(v). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Deputy Commissioner to show the claimant is capable of performing work in the national economy. **Id.** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Deputy Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. **Brown**, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. **Hedstrom v. Sullivan**, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Deputy Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff alleges the ALJ erred in failing to consider the combined effects of all her impairments, both severe and non-severe, in formulating her residual functional capacity, which error then infected the hypothetical propounded to the vocational expert at the hearing, undermining the ALJ's step five finding. In addition, plaintiff claims the ALJ improperly discredited her subjective complaints of pain and functional limitation. Perceiving no such error in the ALJ's consideration and determination of these issues, or on the ultimate issue of disability, I affirm.

At step two of the sequential evaluation, the ALJ found plaintiff's alleged insomnia, GERD, fatty liver disease, cervical spine disorder, and anxiety did not constitute severe impairments. (Tr. 21-22.) ***See* Social Security Ruling** 85-28, 1985 WL 56856 at *3 (SSA 1985) (impairment not considered severe if it constitutes no more than a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered"). Yet even where an impairment is found non-severe, the ALJ still must consider its impact in combination with all other impairments, both severe and non-severe, in assessing a claimant's

residual functional capacity.³  *See* 20 C.F.R. § 416.945(a)(2).  **Social Security Ruling**
**85-28**, 1985 WL 56856 at *1-2 (SSA 1985).  However, while the ALJ may not simply rely
on his finding of non-severity as a proxy for a proper residual functional capacity
analysis, *see Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013), neither must his
step two findings necessarily be translated into work-related functional limitations at
step four, *see Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *Suttles v. Colvin*,
543 Fed. Appx. 824, 826-27 (10th Cir. 2013).  *See also Manning v. Colvin*, 182
F.Supp.3d 1156, 1164 (D. Colo. 2016).

There can be little question but that plaintiff has complained to multiple
healthcare providers of a variety of symptoms over the years.  Nevertheless, short of
simply cataloguing these reports, plaintiff does little to demonstrate how her alleged
impairments impact her work-related functional abilities.  The diagnosis of an
impairment does not necessarily make that impairment severe, much less disabling.
***Madrid v. Astrue***, 243 Fed. Appx. 387, 392 (10th Cir. July 18, 2007); ***Hinkle v. Apfel***,
132 F.3d 1349, 1352 (10th Cir. 1997).  Moreover, while the ALJ is required to *consider*
all impairments in making his assessment, *see* 20 C.F.R. § 416.923, he is not required
to *discuss* them all, ***Manning***, 182 F.Supp.3d at 1164.  The ALJ's careful and thorough
opinion here gives me no reason to doubt his assertion that he considered all plaintiff's
complaints in making his assessment, *see **Hackett v. Barnhart***, 395 F.3d 1168, 1173

---

³ Although plaintiff also lumps her claims of persistent nausea and vomiting into the litany of impairments she claims the ALJ did not address, she admits what the ALJ found at step two – that plaintiff's complaints of "colic," first reported in April 2014 (Tr. 1462) were largely resolved following gallbladder surgery in September of that same year (*see* Tr. 22, 1097 (noting plaintiff reported "You cured my vomiting!")), and thus did not meet the durational requirements of the regulations, *see* 20 C.F.R. § 416.909.  Although plaintiff testified she still have intermittent waves of nausea, she treats them with breathing techniques and over-the-counter medications.  (Tr. 55-56.)

(10th Cir. 2005), especially where plaintiff has failed to articulate – much less attempt to demonstrate – how these alleged omissions prejudiced her, *see Lumpkin v. Colvin*, 112 F.Supp.3d 1169, 1174 (D. Colo. 2015) (citing **Bernal v. Bowen**, 851 F.2d 297, 302 (10th Cir. 1988)).

For example, while x-rays showed plaintiff had moderately advanced discogenic spondylosis, mild bilateral joint arthrosis, and mild formaminal encroachment at C5-C6 (Tr. 1119), physical examinations of plaintiff's neck and cervical were uniformly normal, with plaintiff reported to have full range of motion, no tenderness, and full strength (***see, e.g.***, Tr. 818, 1196-1197, 1205, 1349, 1415). The ALJ observed the lack of evidence of any persistent symptoms attributable to this condition, as well as the lack of consistent treatment related thereto. (Tr. 21.) Nothing in the record suggests any further limitations were warranted as a result of this non-severe impairment.

Likewise, in the period after her alleged date of onset in 2010,[4] plaintiff sought treatment for headaches[5] only a handful of times in when she also was suffering from a sinus infection, which quite naturally might lead to headaches. (***See*** Tr. 846 & 853 (September and October 2011), 1393 (August 2012), 1428 (March 2014).) Elsewhere, plaintiff appears to conflate her self-reported complaints of headaches with evidence of a severe impairment. The regulations clearly are to the contrary, however; a claimant's subjective reports of symptoms are never sufficient standing alone to establish the existence of an impairment, much less a severe one. ***See*** 20 C.F.R. § 416.929(b);

---

[4] Some of the evidence to which plaintiff cites predates her alleged date of onset. (***See*** Tr. 437, 623, 715, 896.)

[5] Although a history of headaches sometimes were mentioned in the preliminary review of symptoms, they were not one of the reasons plaintiff sought treatment in those instances. (***See*** Tr. 1006, 1081, 1083, 1348.)

7

*Zagorianakos v. Colvin*, 81 F.Supp.3d 1036, 1042 (D. Colo. 2015). Moreover, that line of reasoning assumes what it seeks to prove: that plaintiff's complaints were fully credible. In vetting all the evidence before him, the ALJ was not required to indulge that same assumption, however.

Similar issues arise in connection with plaintiff's claims of dizzy spells and syncope, for which plaintiff sought treatment only twice over a period of four years (Tr. 799-801 (2010), 1082-1084 (2014)), and which appear to have been of short duration (Tr. 800 (dizzy spells last for 45 seconds)), and required minimal and conservative treatment (Tr. 1084 (advising plaintiff to stop caffeine, increase fluid intake, lose weight, and employ relaxation techniques)). While plaintiff reported fatigue as a result of these spells (Tr. 1083), other mentions of fatigue, daytime somnolence, and anemia in the record are sporadic and suggest plaintiff's anemia was treated with nothing more than B12 shots (Tr. 819, 1354, 1423).[6]

Likewise, although plaintiff was diagnosed with degenerative joint disease in her knees (Tr. 884) and chronic sacroiliitis (Tr. 685), she consistently was noted to have normal gait and full strength in her lower extremities (Tr. 818, 1196, 1204, 1349, 1415, 1496). The first mention of fibromyalgia in the record is from March 2015, at which time it is not even clear plaintiff was tested for of diagnosed with fibromyalgia. (Tr. 1493-1494.)[7] Moreover, plaintiff's physical examination at that time was normal and

---

[6] Not insignificantly, the record also contains records in which plaintiff reported no fatigue or daytime somnolence (Tr. 1052) or was noted, despite her reports of fatigue, to be fully alert (Tr. 773, 779). The consultative examiner too noted plaintiff did not appear drowsy during her examination and was "clear and coherent throughout." (Tr. 991.)

[7] Plaintiff sought treatment on that occasion for evaluation of left shoulder pain. It was noted only that plaintiff presented with unspecified fibromyalgia symptoms. (Tr. 1493.) There is no evidence in the record demonstrating plaintiff has ever been diagnosed with or treated for fibromyalgia specifically, however.

unremarkable. (Tr. 1495-1496.) Aside from her own subjective complaints, plaintiff has pointed to nothing in the record which suggests these conditions impose additional physical limitations on her functional abilities not accounted for by the ALJ's residual functional capacity assessment.[8]

Plaintiff also takes issue with the ALJ's assessment of her alleged mental impairments. Specifically, she perceives a conflict between the ALJ's affording the opinion of the consultative examiner, Lauren K. Davis, D.O., "significant weight" (Tr. 30), without explaining why he did not adopt her suggestion that plaintiff's multiple psychiatric disorders would "interfere with her ability to function on a daily basis" or follow her concomitant suggestion to order a formal psychiatric evaluation (Tr. 995). Yet Dr. Davis herself did not undertake – and acknowledged she was not qualified to undertake – an evaluation of plaintiff's mental functional capacity. Thus, her general impression regarding the possible impact of plaintiff's alleged mental impairments on plaintiff's functional abilities was not a true medical opinion. *See* 20 C.F.R. § 416.927(a)(1) ("Medical opinions are statements . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Because the ALJ therefore was not required to take that particular statement by Dr. Davis into consideration at all, there was no conflict in his decision to afford significant weight to Dr. Davis's true medical opinions concerning plaintiff's

---

[8] Because there is no infirmity in the ALJ's determination of plaintiff's residual functional capacity at step four, there was no attendant error in the hypothetical he propounded to the vocational expert at the hearing. Plaintiff's challenge to the ALJ's step five findings therefore fails as well.

physical capacity – which were within her realm of expertise – while failing to address or adopt her impressions of plaintiff's mental capacity – which were not.

Plaintiff further faults the ALJ for failing to order the psychiatric consultative examination Dr. Davis suggested was appropriate based on her observations. Under the regulations, the ALJ may order a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [him] to make a determination or decision[.]" 20 C.F.R. § 416.919a(b).[9] The ALJ here noted that although the initial psychiatric examiner found the record insufficient to evaluate plaintiff's alleged mental impairments (*see* Tr. 92-93),[10] he found the record as developed subsequently adequate to allow the ALJ to evaluate plaintiff's alleged mental impairments (Tr. 31). The ALJ then thoroughly reviewed the evidence and cogently assessed plaintiff's mental residual functional capacity himself, as it was within his discretion to do. (Tr. 29.) *See* 20 C.F.R. § 416.920a(d)(1)(i); **Andrade v. Secretary of Health and Human Services**, 985 F.2d 1045, 1049 (10th Cir. 1993).

---

[9] Such circumstances may arises where, for example,

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
>
> (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 416.919a(b). None of these circumstances pertains here.

[10] Significantly, the reason noted for this inability was plaintiff's own failure to complete the necessary paperwork or to return phone calls, resulting in an inability to schedule a consultative examination. (Tr. 93.)

10

I can find no reversible error in his determination in that regard. Indeed, even plaintiff admits the record contains abundant evidence demonstrating that, despite her complaints of depression, she repeatedly was reported as exhibiting normal mood and affect and intact insight, judgment, and memory. There is nothing in this evidence to suggest the type of ambiguity or uncertainty which would have made it an abuse of discretion to decline to order a psychiatric consultative examination.[11] To accept plaintiff's argument would require me to reweigh the evidence, an endeavor I am not empowered to undertake. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Nor did the ALJ err in his assessment of plaintiff's credibility. "[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). So long as the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference. *Id.* at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Such deference is warranted on this record. The ALJ here gave clear, specific, legitimate reasons linked to specific evidence in the record for his credibility assessment. While plaintiff focuses myopically on the ALJ's assessment of her activities of daily living,[12] she ignores his painstakingly detailed discussion of her long history of relatively benign and unremarkable objective findings and the conservative

---

[11] Indeed, even when she was admitted to the hospital following a 2013 suicide attempt, plaintiff acknowledged her depression was a life-long illness which had been "stable" and "doing well" with "no recent changes" up to the immediate crisis which perpetuated her suicidal thoughts. (Tr. 1283.)

[12] Plaintiff complains the ALJ overstated her activities of daily living by failing to address her allegation that she could perform most of those activities only on "good days." (*See* Tr. 51-52.) Even if that finding is infirm, however, the ALJ's credibility determination is fully supported by his citation to and discussion of the objective evidence, plaintiff's course of treatment, and his observations of plaintiff's demeanor at the hearing.

treatments she received to treat her many alleged impairments. (Tr. 26-30.) She also overlooks the ALJ's observations that plaintiff was pleasant and cooperative during the hearing, in seeming contravention of her allegation that she has difficulty getting along with others, and was able during the hearing "to sit, stand, and walk without apparent difficulty," contrary to her complaints of disabling pain. (Tr. 30.) *See* **Social Security Ruling** 96-8p, 1996 WL 374184 at *7 (SSA July 2, 1996) (ALJ's observations are appropriate, together with other considerations, in assessing credibility); ***White***, 287 F.3d at 909 (same). To the extent plaintiff faults the ALJ for allegedly failing to discuss all the potentially relevant factors outlined in 20 C.F.R. § 416.929(c), she fails to suggest how that omission prejudiced her, ***see Bernal***, 851 F.2d at 303, or to appreciate that the ALJ was not required to recite and discuss these factors as a litany in any event, ***see Qualls***, 206 F.3d at 1372. In short, no reversible error occurred in this regard, either.

## IV. ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Deputy Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated June 6, 2018, at Denver, Colorado.

                                    **BY THE COURT:**

                                    */s/ Bob Blackburn*
                                    Robert E. Blackburn
                                    United States District Judge